STATE OF TENNESSEE, EX REL., COMPLAINANT, APPELLEE, *v.* WILL CUMMINGS, JUDGE, *et al.,* DEFENDANTS, APPELLANTS.

(*Knoxville,* September Term, 1933.)

Opinion filed October 14, 1933.

Cooke, Swaney & Cooke, for complainant, appellee.

Carter J. Lynch, for defendants, appellants.

Mr. Justice McKinney delivered the opinion of the Court.

This is a mandamus suit instituted by the State of Tennessee on the relation of Gus E. Hamby against Will Cummings, Judge of the County Court of Hamilton County, to compel him to issue a warrant to relator for $42.50, due May 1, 1933, for services performed under a contract with the Highway Commissioners of said county.

Complainant is a son of Luther Hamby, a justice of the peace of said county. Judge Cummings declined to issue a warrant because of the prohibition contained in chapter 695, Private Acts of 1933. Said Act provides that in all counties in this State having a population of not less than 159,000 and not more than 200,000 by the Federal

Census of 1930, or any subsequent Federal Census, it shall be a misdemeanor, punishable by fine and imprisonment, "for any member of the County Court or any person related within the third degree to any member of the County Court, to enter into any contract for the sale of property, rendering of any service, furnishing of any supplies, or doing other things for a consideration to be paid out of public funds of the county or any public funds of the State disbursed by any officer or agency of the county and over which the County Court may have jurisdiction."

It is conceded that the Act applies solely to Hamilton County.

Complainant is an automobile mechanic, his duties being to keep the trucks and automobiles of the county in repair.

The bill charges that this statute is vicious class legislation, violative of article 1, section 8, and article 11, section 8, of the State Constitution, and the Fourteenth Amendment to the Constitution of the United States.

The Chancellor heard the cause upon bill and demurrer, and being of the opinion that the Act in question was arbitrary and therefore invalid, and it being admitted by counsel for defendant that complainant was entitled to the relief sought if said Act was invalid, entered a decree awarding a peremptory writ of mandamus. Defendant has appealed and assigns for error the action of the Chancellor in holding said Act unconstitutional.

Article 1, section 8, of the Constitution is as follows:

"That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."

Both the words "liberty" and "property" in the foregoing section include the right to make contracts. *Dugger* v. *Insurance Co.*, 95 Tenn., 252; *Bank* v. *Grocery Co.*, 97 Tenn., 612; *Harbison* v. *Iron Co.*, 103 Tenn., 441. Liberty to contract is one of the rights guaranteed by the Constitution. *Campbell* v. *McIntyre,* 165 Tenn., 52.

 It is true that the right to contract is subject to curtailment, limitation and destruction by the legislature when done pursuant to "the law of the land." *Dugger* v. *Insurance Co., supra; Harbison* v. *Iron Co., supra; Standard Oil Co.* v. *State,* 117 Tenn., 676. By the phrase "the law of the land" is most clearly intended the general law. *State* v. *Staten,* 46 Tenn., 244; *Knox* v. *State,* 68 Tenn., 207; *Harbison* v. *Iron Co., supra.* The general rule is that the legislature cannot pass special acts, but there are certain exceptions to this rule. *The Redistricting Cases,* 111 Tenn., 287. Classification from a population basis is permissible where the classification is based upon reason, is natural, and not arbitrary or capricious.

We are unable to perceive any justification for denying to the large number of citizens of Hamilton County affected by this Act their constitutional right to contract when citizens similarly situated in the other counties of the State are not deprived of that privilege. Conceding, as did the Chancellor, that political nepotism is a "hateful thing," we are unable to say that it is more prevalent in Hamilton County than in the other counties of the State, and if such a law would improve political conditions in Hamilton County, such a law would likewise benefit the other counties in the State. It is argued, however, that the court can visualize a different situation in Hamilton County from that existing in the other counties, due to the fact that the legislature, by chapter 281, Pri-

464

vate Acts of 1911, repealed chapter 92, Acts of 1869-70, section 1874, Code of 1932, as to Hamilton County, which Act prohibited members of the County Court from becoming interested in any contract with the county. The question as to the validity of the attempted repeal of this general law for the benefit of Hamilton County is not before us for determination. But see *Woodard* v. *Brien*, 82 Tenn., 523.

It is further insisted that the Act here involved was designed to affect the county in its political and governmental capacity. While it may so affect the county, as most statutes limited to a particular county do, nevertheless if it primarily affects the rights of the citizens, without affecting others in like condition elsewhere in the State, it is invalid.

In *State* v. *Turnpike Co.*, 133 Tenn., 446, 450, it is said: "If classification by population were deemed permissible of adoption for every purpose, each county and municipality may for its government be provided with a distinct code of laws, general in mere form, but special or local in substance and fact.

"Legislative acts made special, by use of the population standard for classification, may be restricted to affect a certain county or counties in their political or governmental capacity, but where such legislation is designed immediately to affect the rights of the citizen, whether a natural or artificial person, in his or its property rights, without affecting others in like condition elsewhere in the State, it may be unconstitutional."

In *The Redistricting Cases*, 111 Tenn., 287, the court has summarized the instances in which special acts may be enacted for the benefit of a county as follows: "We have seen that special laws may be passed for the pur-

pose of empowering counties to make contracts and impose taxes for the purpose of making internal improvements, and for other county purposes; that special acts may be passed for the benefit of individual counties, creating county judges therefor; also that special acts may be passed for the benefit of individual counties, authorizing the municipal corporations therein to elect, for the benefit of the county, justices of the peace, additional to the number provided in section 15 of article 6 for the county, as measured by the number of its civil districts.''

To the foregoing cases may be added that of the Divorce Proctor Act, limited to Davidson and Shelby Counties, in which the classification was held reasonable, the court saying: ''While the rights of individuals are incidentally affected, the dominant purpose of the statute was to accomplish good for the county as a body politic.'' *Wilson* v. *Wilson,* 134 Tenn., 697, 702.

On the other hand, statutes involved in the following cases, while affecting the county in its governmental capacity, were held invalid because they infringed upon the rights of the individual, to-wit: *State* v. *Burnett,* 53 Tenn., 189; *Burkholtz* v. *State,* 84 Tenn., 71; *State* v. *Kerby,* 136 Tenn., 386; *State ex rel.* v. *Stewart,* 147 Tenn., 375; *Peters* v. *O'Brien,* 152 Tenn., 468; *State ex rel. Scandlyn* v. *Trotter,* 153 Tenn., 30.

It is impossible to formulate a rule that will fit all cases. Each case, as it arises, must be determined upon its own facts and surroundings in accordance with the general principles heretofore announced by this court. In the cause under consideration we think the Act involved deprives complainant, and those similarly situated in Hamilton County, of rights enjoyed by citizens of the same class in other counties of the State, and that the classification is unreasonable, unnatural, and arbitrary.

The decree of the Chancellor will be affirmed.